590 P.2d 987 (1979)
Emanuel ARELLANO, Petitioner,
v.
DIRECTOR, DIVISION OF LABOR, Industrial Commission of the State of Colorado, Mountain States Telephone and Telegraph Company, Respondents.
No. 77-1067.
Colorado Court of Appeals, Div. II.
February 1, 1979.
*989 Vernon P. Playton, Denver, for petitioner.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Louis L. Kelley, John Kezer, Asst. Attys. Gen., Denver, for respondent Director, Div. of Labor.
Laura F. Davidson, Denver, Lowell Fortune, P. C., Denver, for respondent Mountain States Tel. & Tel. Co.
ENOCH, Judge.
Petitioner seeks review of an order entered by respondent, Industrial Commission, denying his petition to reopen and reinstate his original workmen's compensation benefits. We affirm in part and set aside in part.
At issue is the interpretation of § 8-51-108(3)(a), C.R.S.1973, which until repealed, 1975 Colo.Sess.Laws § 62, p. 311, allowed an employer to elect to continue to employ an injured employee at his normal rate of pay if the permanent partial disability was less than 5%. The statute permitted an employer to obtain a credit for permanent partial disability payments paid the employee in amounts equivalent to the employee's weekly benefit rate of compensation while the employee continued to work for the employer or the employer offered to continue a physically able employee in employment. Further, the statute provided that:
"If, during the six years following the date of his accident, the injured employee is dismissed from employment, resigns from employment, or is denied employment as a result of his disability, he may petition the director for a redetermination of his original permanent partial disability award, and upon a proper showing of his limitations in the labor market, the director shall order the reinstatement of his original award."
Petitioner suffered injury in an accident on March 7, 1972, while employed by respondent Mountain States Telephone and Telegraph Company. Petitioner missed some work after the accident but continued to be employed. A year later, on March 22, 1973, the referee, acting for the Division of Labor, issued an order directing the employer to pay petitioner compensation for intermittent total disability between March 8, 1972, and September 26, 1972. The referee further ordered the employer to make compensation payments for permanent partial disability in the amount of 3% as a working unit beginning September 27, 1972, until the total sum of $2,809.09 was paid to petitioner. After entry of the order, the employer petitioned for review of the 3% amount, construing it as an order for lump sum payment, and argued that "[p]ursuant to the provisions of C.R.S.1963, 81-12-11(3) *990 (sic)[1] (1971 Perm.Supp.)" the employer could continue to employ the injured employee at his normal rate of pay.
On June 27, 1973, while the employer's petition was pending, petitioner was discharged from his job for failing to notify his employer of absences. Thereafter, on October 3, 1973, the employer withdrew its petition for review, made a special admission of liability for 3% permanent partial disability, and elected to invoke the 5% rule, "C.R.S.1963 as amended, 81-12-9(3)(a)."
Petitioner filed a petition to reopen the award, arguing that he had been discharged because of his disability and that the employer's election of the 5% rule was untimely. The referee decided against petitioner, finding that the discharge was caused by petitioner's failure to notify his employer of the disability-related absences, not by an inability to perform. The referee also held that the employer's election of the 5% rule was timely. The Commission affirmed this award, and petitioner filed an appeal with this court on April 16, 1976. Petitioner did not allege at that time that he was incapable of performing the duties offered by his employer, nor did he petition to review the original award entered March 22, 1973.
On June 18, 1976, petitioner filed a second petition to reopen his original award on the basis that his condition had worsened. We granted petitioner's request to abate his first appeal while awaiting a decision on the second petition, and thereafter dismissed the first appeal without prejudice. Granting petitioner's second petition to reopen on January 17, 1977, the referee found that (1) petitioner had suffered a 7% permanent partial disability as a working unit, with maximum medical improvement as of April 23, 1976, (2) the initial 3% award would not be reinstated because claimant had been dismissed for misconduct, and (3) Social Security disability benefits received by petitioner would be set off against the additional award for disability. The Commissioner's award based on the referee's second supplemental order is the subject of this appeal by petitioner.

I.
Petitioner first argues that he is entitled to a reinstatement of the original 3% award because the employer did not timely elect the 5% rule of § 8-51-108(3)(a), C.R.S.1973, and is therefore not entitled to any credit under the terms of the statute. We disagree.
Although the employer erroneously cited the statute in its petition for rehearing of the referee's March 22, 1973, order, the petition, together with the continued employment of petitioner, reveals the employer's intent to invoke the 5% rule if unsuccessful on appeal. There is nothing in the statute which prescribes a procedure for invoking the 5% rule where, as here, the employer contests liability. We therefore hold that where an employer continues to employ the injured employee and indicates its intent to elect the 5% rule if unsuccessful in contesting an award, the employer has timely invoked the provisions of § 8-51-108(3)(a), C.R.S.1973.

II.
Petitioner next argues that he is entitled to reinstatement of the original award because the referee found in his January 17, 1977, supplemental order that petitioner was unable to perform the work required. Petitioner is in effect arguing that the employer is not entitled to any credit against the 3% disability for the wages paid to the employee after the injury. We disagree.
Section 8-51-108(3)(a), C.R.S.1973, states that the employer will receive a credit for awards of compensation so long as the employer "continues or offers to continue the employee in employment, unless the director finds upon competent evidence that the employee is physically unable to perform the duties offered by the employer." (emphasis added) Contrary to petitioner's argument, this language does not authorize a reinstatement of the original award in this case. The statute allows reinstatement *991 if, while the employee is unemployed, the employer offers duties which the director finds the employee is unable to perform. Here the employer did not offer to employ petitioner after June 1973, and the employer makes no claim for credit after that time. Thus it is immaterial whether petitioner was physically unable to perform the duties which might have been offered. The employer is entitled to credit against the initial award of 3% permanent partial disability for the wages and benefits actually paid to petitioner during the time of continued employment.

III.
Petitioner also contends that by the terms of the statute he is entitled to a reinstatement of his original award because he was dismissed from employment during the six years following the date of his accident and he has shown his limitations in the labor market. We are not persuaded by petitioner's argument.
Section 8-51-108(3)(a), C.R.S.1973, states that reinstatement is required if "the injured employee is dismissed from employment, resigns from employment, or is denied employment as a result of his disability. . . ." (emphasis added) When interpreting a statute, we are required to ascertain the legislative intent and to give effect to every word and phrase of the enactment. Johnston v. City Council of Greenwood Village, 177 Colo. 223, 493 P.2d 651 (1972). Petitioner would have this court read the statute as allowing reinstatement any time the employee is dismissed, regardless of the reason for dismissal. Such an interpretation, however, is directly contrary to the clear intent of the General Assembly as expressed by the wording of the statute. Therefore, because the referee found that the dismissal was a result of petitioner's failure to notify his employer, not a result of his disability, petitioner is not entitled to a reinstatement of the original award.
Petitioner argues that so to construe the statute effects a denial of due process because he is deprived of compensation owed to him. We disagree.
The statute allows an employer to employ a partially disabled employee at full wages and to obtain a credit for compensation which reflects the difference between the employee's productivity before and after the accident. Thus, while petitioner was employed, he was paid part of the 3% award to which he was entitled. The employer does not contest the fact that any amounts not accrued during petitioner's employment are still owed. Therefore, notwithstanding the referee's statement in his January 17, 1977, order that the employer is due a credit for the entire 3% award, we agree with the employer that any compensation not accrued during petitioner's employment is not to be credited to employer but should be paid to petitioner.

IV.
Petitioner also urges that he has been denied due process of law because the Commission set off amounts paid under Social Security disability benefits against the amount of additional compensation awarded in the January 17, 1977, order without finding that the payments were for the same disability. We disagree.
A Social Security setoff, as provided in § 8-51-101(1)(c), C.R.S.1973, is permissible to avoid "double payment" for an injury. Cf. Myers v. State, 162 Colo. 435, 428 P.2d 83 (1967). Because one purpose of the statute is to benefit the employer who is bound by law to provide the employee with workmen's compensation benefits, an employee has an obligation to apply for the Social Security benefits. Hurtado v. CF&I Steel Corp., 168 Colo. 37, 449 P.2d 819 (1969). Failure to apply entitles the employer to determine the payability of Social Security benefits and to reduce workmen's compensation benefits, unless the employee initiates an evidentiary hearing to determine the payability of the Social Security benefits. Hurtado, supra. Thus there arises a presumption that Social Security disability benefits are payable as a result of an injury. Here petitioner did not present *992 any evidence that the Social Security benefits paid to him were not a result of the March 1972 injury. Therefore the Commission was correct in applying a Social Security offset against the additional amount of workmen's compensation owed to petitioner.

V.
Petitioner's argument that the statute violates equal protection under the laws is disposed of by the Supreme Court's ruling in Olson v. Public Service Co., 190 Colo. 512, 549 P.2d 780 (1976). We have considered petitioner's other allegations of error and find them to be without merit.
The award is affirmed except as to the credit allowed employer on the original 3% award, and the cause is remanded for a determination of the balance of the 3% award due petitioner after credit to employer for compensation paid petitioner during the period of his employment after the injury.
KELLY and STERNBERG, JJ., concur.
NOTES
[1] The correct citation was C.R.S.1963, 81-12-9(3)(a) (1971 Perm.Supp.).