John **BELLENDIR**, Plaintiff-Appellant,

v.

John **KEZER**, as Director of the Colorado Division of Labor; the Colorado Department of Labor and Employment, and the Industrial Commission of Colorado, Defendants-Appellees.

No. 81SA288.

Supreme Court of Colorado, En Banc.

July 19, 1982.

DeMoulin, Anderson, Campbell & Laugesen, William P. DeMoulin, Denver, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Timothy R. Arnold, William J. Higgins, Asst. Atty. Gen., Denver, for defendants-appellees.

DUBOFSKY, Justice.

The plaintiff, John Bellendir, appeals the Denver district court's summary judgment dismissal of his claim challenging the constitutionality of the Colorado Workmen's Compensation Act (Act), section 8–40–101, *et seq.*, C.R.S.1973 and 1981 Supp.[1] The district court determined that the failure of the Act to provide for escalation in past workmen's compensation awards to keep pace with inflation does not violate the due process or equal protection guarantees of the U.S. and Colorado Constitutions. We affirm the district court's ruling.

The facts of this case are not in dispute. On February 26, 1963, the plaintiff sustained severe injuries resulting from an accident in the course of his employment. The State Compensation Insurance Fund, as the worker's compensation insurance carrier, filed a special admission of liability stipulating that the plaintiff was permanently and totally disabled. Under C.R.S.1963, 81–12–8 (now section 8–51–107, C.R.S.1973), the plaintiff was awarded lifetime disability payments of $40.25 per week.

---

1. This case was transferred to this Court from the Court of Appeals because the plaintiff raised a constitutional issue. *See* sections 13–4–110 and 13–4–102(1)(b), C.R.S.1973.

In June 1980, the plaintiff filed a complaint in Denver district court alleging that, effective July 1, 1980, the maximum award for permanent total disability was $244.65 per week, that he continues to receive only $40.25 per week, and that the Act is unconstitutional because it fails to provide for an increase in his award commensurate with benefits available to claimants injured in subsequent years. The district court granted the motion for summary judgment filed by the Division of Labor (Division), finding that the provisions of the Act and the benefits derived therefrom did not violate due process or equal protection.

At the time the plaintiff's disability benefits were determined, C.R.S.1963, 81–12–2 and 81–12–8 provided that, in cases of permanent total disability, the amount awarded would equal sixty-six and two-thirds percent of the average weekly wage of the injured employee, not to exceed a statutorily prescribed ceiling of $43.75 per week. After the plaintiff's award in 1963, the General Assembly periodically amended the statute to raise the ceiling. By 1973, the maximum was $84.00 per week. The General Assembly abandoned this system for 1974 and the years thereafter and delegated authority to the Director of the Division to determine a benefit ceiling. See Colo.Sess. Laws 1973, ch. 271, 81–7–19 at 943. The current provision, section 8–46–113, C.R.S. 1973 (1981 Supp.), requires the Director to determine each year the "state average weekly wage," based on national statistics weighted so as to more accurately reflect wages in Colorado. Under the current statute, the ceiling for determining the maximum benefits payable to a person who is permanently and totally disabled is eighty percent of the state average weekly wage. Section 8–51–102, C.R.S.1973 (1981 Supp.).

Although the benefit ceiling has been raised since the time of the plaintiff's accident, the benefit level continues, in the first instance, to be determined in relation to the injured employee's actual weekly wage at the time of his accident.[2] Both at the time of the plaintiff's injury and at the present time, an employee who suffers a permanent total disability would receive sixty-six and two-thirds percent of his average weekly wage. Section 8–51–107, C.R.S.1973. The benefit ceiling is applicable only if weekly benefits calculated on the basis of two-thirds of the employee's actual weekly wage exceed the benefit ceiling.

The increases in the maximum award a totally disabled worker is eligible to receive are a recognition by the General Assembly that, as a result of inflation in the overall economy, workers' wages have risen, and the amount necessary to compensate an injured worker for loss of earning power has increased commensurately. In essence, the plaintiff's argument is that the absence in the Act of an escalation clause applicable to *past* awards has allowed inflation to so erode his award of compensation for permanent disability that it amounts to a deprivation of his statutory right to compensation in violation of due process. He also argues that because the current Act provides for a much larger award to a worker with the same job who suffers a permanently disabling injury, it violates equal protection.

■ Our past decisions have established that, in order to meet a challenge against the worker compensation scheme based on due process or equal protection, the state need only show that the challenged provision is rationally related to a legitimate state purpose. *E.g., Ryan v. Centennial Race Track, Inc.*, 196 Colo. 30, 580 P.2d 794 (1978); *Olson v. Public Service Company*, 190 Colo. 512, 549 P.2d 780 (1976). Under the rational relation test, due process requires only that legislation or state action enacted under the police power be reasonable, and not arbitrary or capricious. *U. S. Disposal Systems v. City of Northglenn*, 193 Colo. 277, 567 P.2d 365 (1977). The same test applies to equal protection challenges. As the United States Supreme Court stated in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1969),

2. Section 8–47–101, C.R.S.1973 and 1981 Supp. provides methods for determining a worker's average weekly wage, including formulas for converting wages paid on a daily, hourly, monthly or piecework basis to a weekly rate.

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because ". . . in practice, it results in some inequality." [citation omitted]

397 U.S. at 485, 90 S.Ct. at 1161, *quoted in Manor Vail Condominium Association v. Town of Vail*, 199 Colo. 62, 604 P.2d 1168 (1980).

■ The purpose of the Workmen's Compensation Act is to protect employees who sustain injuries arising out of their employment. *Vanadium Corp. of America v. Sargent*, 134 Colo. 555, 307 P.2d 454 (1957). Benefits are based on loss or impairment of the worker's earning power. *City of Littleton v. Schum*, 38 Colo.App. 122, 553 P.2d 399 (1976). Because a primary purpose of the worker compensation scheme is to afford injured workers a reliable source of compensation, the Act, unlike applicable common law remedies, does not require proof of fault before the worker may recover benefits. *Frohlick Crane Service, Inc. v. Mack*, 182 Colo. 34, 510 P.2d 891 (1973). *See* section 8–52–102, C.R.S.1973 (1981 Supp.). Another major concern addressed by the Act is the need to provide a method whereby claims arising out of industrial accidents can be speedily resolved. *Industrial Commission of Colorado v. Globe Indemnity Company*, 145 Colo. 453, 358 P.2d 885 (1961).

In order to effectuate the Act's basic goals of speedy and reliable compensation of injured workers, the General Assembly has enacted a formula which calculates awards to an injured worker based on loss of earning power *at the time of injury. See* section 8–47–101, C.R.S.1973 and 1981 Supp. The formula allows all parties involved to determine with some degree of certainty the amount of compensation to which the worker is entitled. Not only does this certainty aid the parties in reaching prompt agreement on compensation issues, it also aids the state insurance compensation fund and other insurors in setting employer premiums.

■ Obviously, the statutory formula is arbitrary in the sense that the General Assembly might have chosen some other method of computing disability benefits. Our inquiry is limited, however, to whether the scheme as presently constituted furthers a legitimate state purpose in a rational manner. An expeditious method of compensating disabled workers is a legitimate governmental objective, *see Olson v. Public Service Company*, to which the formula of fixed awards for permanent disability is rationally related. Therefore, we conclude that the compensation formula violates neither due process nor equal protection.

The plaintiff also argues that amendments to the Act raising the upper limit on awards for later victims of employment injuries whose jobs are identical to the one held by the plaintiff deny him equal protection of the laws. Because the plaintiff's award was based solely on his actual weekly wage, without resort to the statutory maximum in effect in 1963, we decline to address here the plaintiff's claim relating to maximum awards.

In determining that the absence of an escalation of benefits provision applicable to individuals in the plaintiff's position violates no constitutional guarantee, we do not mean to indicate that the present statute necessarily best fulfills the social and economic objectives it was designed to achieve or that a more just system could not be formulated. We agree with the plaintiff that the Act makes no provision for cost-of-living increases in an economy which the General Assembly recognizes is subject to inflationary pressures. We note as well that as of 1979, 22 states had enacted some form of cost-of-living adjustments for past awards, frequently keyed to increases in the state's average weekly wage. 2 *Larson, Workmen's Compensation Law* § 60.60, at 10–657 to 10–660 (1981). However, it is not the function of this Court to rewrite legislation; the power to change the present scheme rests with the General Assembly.

Because we determine that the provisions for benefits to the plaintiff are constitu-

tional, we need not reach the plaintiff's final contention that a retroactive increase in past awards to permanently and totally disabled workers would not be retrospective legislation in violation of Article II, § 11 of the Colorado Constitution.

Judgment affirmed.

HODGES, C. J., does not participate.